UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X   Case No.:   1:22-cv-05682

DOROTHY ROSS,

                      Plaintiff,

                      **COMPLAINT**

      -against-

AIDS HEALTHCARE FOUNDATION,

                    Plaintiff Demands a
                    Trial by Jury

                      Defendant.
-------------------------------------------------------------X

Plaintiff, by and through her attorneys, Phillips & Associates, PLLC, hereby complains of Defendant AIDS HEALTHCARE FOUNDATION, upon information and belief, as follows:

## INTRODUCTION

1. Plaintiff complains pursuant to 42 U.S.C. § 1981, the Family Medical Leave Act ("FMLA"), Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §2000e et seq. ("Title VII"), and to remedy violations of the New York State Human Rights Law, Executive Law § 296, based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against by her employer on the basis of her race, sex, pregnancy, actual and/or perceived temporary disability, and familial status, together with creating a hostile work environment, retaliation and wrongful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. § 1981, 28 U.S.C. § 1331, § 1343, and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. The Court also has jurisdiction pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

5. Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Eastern District of the State of New York. 28 U.S.C. §1391(b).

6. On or about March 22, 2022, Plaintiff filed her Complaint with the New York State Division of Human Rights (NYSDHR), which was dual-filed with the Equal Employment Opportunity Commission (EEOC).

7. On or about September 6, 2022, NYSDHR approved Plaintiff's request for a dismissal of her complaint for administrative convenience, so that she may pursue her claims in federal court. Plaintiff was also advised that the EEOC would adopt the request for dismissal.

## PARTIES

8. Plaintiff is a female African-American resident of the State of New York, County of Suffolk.

9. At all times material, Defendant AIDS HEALTHCARE FOUNDATION (hereinafter also referred to as "AHF") was and is a foreign not-for-profit corporation duly incorporated under the laws of the State of California.

10. At all times material, Defendant AHF was and is the largest HIV/AIDS healthcare provider in the world, headquartered at 6255 Sunset Blvd., 21st Fl., Los Angeles, CA 90028.

11. At all times material, Defendant AHF operates an office located at 619 Main Street, Farmingdale, NY 11735.

12. At all times material, Plaintiff was an employee of Defendant AHF.

## MATERIAL FACTS

13. In or around the beginning of 2019, Plaintiff applied for the role of Pharmacy Technician at Defendant AHF. However, Plaintiff did not initially hear back from Defendant AHF about her application.

14. In or around November 2019, Plaintiff noticed that there was a new job posting for a Pharmacy Technician position on Indeed.com, so she reapplied for the role.

15. A few weeks later, Defendant AHF's Recruiter, Nicole Castaldo, invited Plaintiff to interview for the Pharmacy Technician position.

16. At this point, Plaintiff was seven (7) months pregnant, but she did not initially disclose her pregnancy because she feared that she would no longer be considered for the role.

17. In or around December 2019, Plaintiff interviewed for the position with Pharmacist Zoya (last name currently unknown) and Pharmacy Technician, Natalie Garcia. Shortly after the in-person interview, and based on Plaintiff's qualifications, Zoya offered Plaintiff the position, and Plaintiff accepted.

18. On or about December 9, 2019, Plaintiff began working for Defendant AHF at its 619 Main Street, Farmingdale, NY 11735 location.

19. Shortly after the beginning of Plaintiff's employment, AHF's employees started to harass Plaintiff on the basis of her pregnancy.

20. For example, a few days into Plaintiff's employment, Ms. Garcia pointed to Plaintiff's stomach and asked Zoya, "**Is it just me, or is that a *huge* bump**?" Plaintiff did not respond because she was a new hire and did not want to "rock the boat" at her new job.

21. On or about December 16, 2019, within earshot of Plaintiff, Ms. Garcia asked Zoya, "**Who gets a job *this far* into a pregnancy**?" Plaintiff approached them and answered, "Any person who needs a job and is willing to work. You know I can hear you talking about me."

22. Later that day, Plaintiff text messaged her colleague, Pharmacy Technician, Devawn Bullard, and complained, "Why is my pregnancy such big news for [Ms. Garcia] to share with everyone or a conversation for [Ms. Garcia] to discuss." Ms. Bullard replied, "[Ms. Garcia] only says that to [ppl] she thinks wont say anything back […]." Ms. Bullard also warned Plaintiff to "hold out" until her 90-day probationary employment period expired before making a complaint of workplace harassment, insinuating that Plaintiff would lose her job if she complained any sooner.

23. The next day, Plaintiff complained to Lead Pharmacy Technician, Rafael Crespo, about Ms. Garcia's remarks. Mr. Crespo instructed Plaintiff to complain directly to Pharmacist, Frank Gulliot.

24. Later that same day, Plaintiff complained to Mr. Gulliot about Ms. Garcia's harassing remarks. Instead of taking action to stop Ms. Garcia's behavior, Mr. Gulliot told Plaintiff to ignore Ms. Garcia's discriminatory comments. Thus, Ms. Garcia's discriminatory behavior continued.

25. In or around January 2020, **Ms. Garcia told Plaintiff that she was a "waste of a hire," because Plaintiff had to take leave**, and complained that she would need to hire a new Pharmacy Technician. Plaintiff again did not respond or react to Ms. Garcia's comments. Additionally, Ms. Garcia was known to yell and curse at employees, and Plaintiff wanted to avoid any verbal altercation.

26. In or around January 2020, Plaintiff notified Defendant AHF that she planned to take maternity leave, and she completed Short-Term Disability documentation.

27. On or about February 3, 2020, Plaintiff began her maternity leave.

28. On or about February 5, 2020, Plaintiff gave birth to her son. Plaintiff's son was born with Omphalece[1], and as a result, suffered from many health issues[2] and required medical attention. Thus, Plaintiff was required to take her son to regular appointments with doctors and specialists.

29. On or about April 1, 2020, Plaintiff returned from her maternity leave.

30. Upon Plaintiff's return, Ms. Garcia said, "I didn't think you were really coming back. **You really duped me when I hired you, because I would have never hired you if I knew you were pregnant**." Again, Plaintiff did not respond.

31. The discriminatory behavior at Defendant AHF did not stop after Plaintiff returned from her maternity leave.

32. Additionally, Plaintiff was also subjected to race discrimination while working at Defendant AHF.

33. For example, in or around late February 2021, after getting off the phone with a customer, Plaintiff's supervisor, Pharmacist Alan Pomeranz (Caucasian), repeatedly used the word "**nigga**" multiple times throughout the course of the day. Ms. Bullard (African-American) telephoned Plaintiff to inform her about the incident.

34. Ms. Bullard also explained that Mr. Pomeranz had received a call from a patient who used the "n-word" first, and Mr. Pomeranz reiterated the incident to the pharmacy staff as if it were a

---

[1] Omphalocele is a birth defect of the abdominal wall, where "[t]he infant's intestines, liver, or other organs stick outside of the belly through the belly button*." Facts About Omphalocele, Birth Defects*, CDC, https://www.cdc.gov/ncbddd/birthdefects/omphalocele.html#:~:text=Omphalocele%20(pronounced%20uhm%2Dfa%2D,ever%20is%20open%20or%20broken. (last visited April 29, 2022).
[2] Plaintiff's son has also since been diagnosed with cystic fibrosis.

joke. Mr. Pomeranz repeated the "n-word" until another Pharmacist, Vincent Alleva, said, "Enough is enough."

35. The next day, upon arriving for her shift, Plaintiff told Mr. Pomeranz that using the word "nigga" was very offensive, and asked him not to use the word again at work. Instead of apologizing for his discriminatory language, Mr. Pomeranz said that **he thought using the word was "funny."**

36. During this conversation, Mr. Pomeranz also attempted to excuse his behavior, stating, "**It's not like I used the '-er' at the end of the word**." Plaintiff stated that he should not use that word at all, because it made her and other African-American employees (Ms. Bullard in particular) feel uncomfortable.

37. After witnessing this exchange between Plaintiff and her supervisor, Mr. Pomeranz, Head Pharmacist, Evangelia Katsamanis (Caucasian) instructed Plaintiff to speak with Human Resources ("HR").

38. However, as soon as Plaintiff left the room, she overheard Ms. Katsamanis tell Mr. Pomeranz, "Maybe this will be the end [of Plaintiff's complaints] and it'll be swept under the rug."

39. Plaintiff returned to the room and told Ms. Katsamanis and Mr. Pomeranz that the discriminatory behavior was "unacceptable" and that she was "not okay with it." Plaintiff also told Ms. Katsamanis that the discriminatory behavior could not be "swept under the rug." Finally, Plaintiff also stated that she feared retaliation, so she asked Ms. Katsamanis to make a complaint to HR on her behalf.

40. Despite Plaintiff's request, Ms. Katsamanis did not personally escalate Plaintiff's concerns to HR.

41. Throughout February 2021, Plaintiff, Ms. Bullard, and Pharmacy Technician, Chardonnay McCollough (African-American) often spoke out about Mr. Pomeranz's racially discriminatory comments, and complained about how Defendant AHF failed to act.

42. Responding to Plaintiff's, Ms. Bullard's, and Ms. McCollough's complaints, Ms. Garcia and Pharmacy Technician, Jeanine (last name currently unknown), said, "***They*** **need to get over it**," and "***They*** **are dragging this 'n-word' thing**."

43. Additionally, Pharmacist Christina (last name currently unknown) told Plaintiff that she should let her complaints go and warned her that she (Plaintiff) could get in trouble for complaining about Mr. Pomeranz because he was her superior.

44. In or around early March 2021, Plaintiff called and emailed Director of HR, Jennifer Grillo. Plaintiff made a complaint about Mr. Pomeranz using the n-word, and Ms. Katsamanis' failure to address the situation or escalate Plaintiff's complaints.

45. Plaintiff did not hear back from Ms. Grillo regarding her first complaint.

46. The following week, Plaintiff, Ms. Bullard, and Ms. McCollough again complained to Ms. Grillo about Mr. Pomeranz's racially discriminatory comments. This time, Plaintiff also complained about Ms. Garcia and Jeanine's comments advising Plaintiff to "get over" the race discrimination.

47. Ms. Grillo told Plaintiff, Ms. Bullard, and Ms. McCollough that she did not think Mr. Pomeranz, Ms. Garcia, or Jeanine "[i]ntended to be offensive." Plaintiff told Ms. Grillo that the comments that Mr. Pomeranz made were "objectively offensive." Ms. Grillo promised to address the situation.

48. However, Ms. Grillo failed to take any further action on Plaintiff's complaints.

49. After Plaintiff made her complaints to Ms. Grillo, Ms. Katsamanis began to retaliate against Plaintiff.

50. For example, when Plaintiff asked her colleagues questions regarding prescriptions, Ms. Katsamanis told Plaintiff to "figure it out [her]self."

51. Before Plaintiff made her complaints, Ms. Katsamanis allowed Plaintiff to bring her son to work. After the complaints, however, Ms. Katsamanis stopped allowing Plaintiff to bring her son. Yet, Ms. Katsamanis continued to allow Ms. Garcia to bring *her* children to work. Ms. Katsamanis herself also continued to bring her child into work.

52. That same month, Plaintiff applied for an accommodation in the form of a schedule change, to care for her one-year-old son. Although HR approved Plaintiff's request, Ms. Katsamanis commented, "**You always have something going on**." Ms. Katsamanis also told Plaintiff to **ask her child's father, or her parents, for help with her son.** Plaintiff, who is a single mother and caregiver to her son, replied that she could manage her family matters herself.

53. In or around early April 2021, Plaintiff met with Ms. Grillo to discuss taking protected leave to care for her son. **Instead of providing Plaintiff options for protected leave, Ms. Grillo encouraged Plaintiff to resign from her position and collect unemployment**. Plaintiff stated that she did not want to resign, and requested to take leave under the Family Medical Leave Act (FMLA) and New York Paid Family Leave.

54. On or about April 27, 2021, Plaintiff had to leave work suddenly because her son was exposed to COVID-19. To humiliate Plaintiff, Ms. Katsamanis told Plaintiff that she needed to get "help," stating that she had her husband and parents to help with her children. Plaintiff stated that she was a single parent and did not have the same resources as Ms. Katsamanis.

8

55. The next day, in retaliation for Plaintiff's complaints, and to create a paper trail of performance issues to justify terminating Plaintiff, Ms. Katsamanis gave Plaintiff a "Final Written Warning" for alleged attendance, insubordination, and performance.  This was Plaintiff's first warning.

56. In response, Plaintiff complained that this final written warning was in retaliation for her complaints of discrimination.  Specifically, Plaintiff wrote:

> "I do not agree with the things being said in the above paragraphs. **I feel the truth is being stretched because of a prior incident at work in which another employee said a derogatory word and offended myself and others of the same race.  I feel I am being targeted for speaking up because I felt uncomfortable, and the workplace has been uneasy ever since.  There has been other thing[s] and statements made as well regarding my work performance, from me taking this position while 7 months pregnant as well as me needing accommodations for my children.  COVID closing school as well as my youngest child having many ailments.**  If needed I can elaborate in more details.  So I'd like the truth to be stated on this write up as well because I am being targeted for thing I have no control over and for things another employee has said to make me and others uncomfortable."

57. Defendant AHF did not take any action in response to Plaintiff's complaints.

58. On or about May 10, 2021, Plaintiff started her FMLA leave to take care of her son.

59. On or about August 16, 2021, Plaintiff returned to work.

60. On or about September 3, 2021, two weeks after Plaintiff returned from her FMLA leave, Ms. Katsamanis terminated Plaintiff for allegedly arriving late to work or leaving early from work without approval on four occasions. However, this was false, because Ms. Katsamanis approved each of the four instances, which involved attending doctors' appointments for Plaintiff and her children.

61. Defendant AHF's reason for terminating Plaintiff was pretext.

62. Defendant AHF would not have terminated Plaintiff but for her race.

63. Defendant AHF would not have terminated Plaintiff but for her sex and pregnancy.

64. Defendant AHF would not have terminated Plaintiff but for her familial status/status as a single mother.

65. Defendant AHF would not have terminated Plaintiff but for her need and/or request for protected leave.

66. Defendant AHF would not have retaliated against Plaintiff but for her opposition to her employer's unlawful employment practices.

67. As a result of Defendant AHF's actions, Plaintiff felt and continues to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

68. As a result of Defendant AHF's discriminatory and intolerable treatment of Plaintiff, she suffered and continues to suffer severe emotional distress and physical ailments.

69. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

70. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts.

71. As Defendant AHF's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendant.

**AS A FIRST CAUSE OF ACTION
UNDER FEDERAL LAW
<u>42 U.S.C. SECTION 1981</u>**

72. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

73. 42 U.S.C. Section 1981 states in relevant part as follows:

    a. Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

    b. "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

74. Plaintiff was discriminated against because of her race as provided under 42 U.S.C. Section 1981 and has suffered damages as set forth herein.

75. Plaintiff also claims retaliation under 42 U.S.C. Section 1981.

### AS A SECOND CAUSE OF ACTION
### UNDER THE FAMILY AND MEDICAL LEAVE ACT
### RETALIATION & INTERFERENCE

76. Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

77. §2614 of the Act states as follows:

    "(a) Restoration to position (1) In general. Except as provided in subsection (b), any eligible employee who takes leave under section [§2612] for the intended purpose of the leave shall be entitled, on return from such leave — (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position."

78. §2615 of the Act states as follows:

    (a) Interference with rights
    (1) Exercise of rights.  It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
    (2) Discrimination.  It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

11

79. Defendant AHF interfered with Plaintiff's rights under the above sections, discriminated against Plaintiff, and terminated Plaintiff from her employment because she requested and/or took FMLA-protected leave.

## AS A THIRD CAUSE OF ACTION
## UNDER TITLE VII
## **DISCRIMINATION**

80. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

81. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, for relief based upon the unlawful employment practices of Defendant AHF. Plaintiff complains of Defendant AHF's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race and pregnancy.

82. Defendant AHF engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff on the basis of her race, pregnancy, and actual and/or perceived (temporary) disability, together with creating a hostile work environment, and wrongful termination.

## AS A FOURTH CAUSE OF ACTION
## UNDER TITLE VII
## **RETALIATION**

83. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

84. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be an unlawful employment practice for an employer:

> "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

85. Defendant AHF engaged in an unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment, because of her opposition to its unlawful employment practices.

## AS A FIFTH CAUSE OF ACTION
## UNDER THE NEW YORK STATE HUMAN RIGHTS LAW
## **DISCRIMINATION**

86. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

87. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's. . . race . . . sex . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

88. Defendant AHF engaged in unlawful discriminatory practices by discriminating against the Plaintiff because of her race, sex, pregnancy, actual and/or perceived (temporary) disability, and familial status, together with creating a hostile work environment, retaliation, and wrongful termination.

89. Plaintiff hereby makes a claim against Defendant AHF under all of the applicable paragraphs of Executive Law Section 296.

### AS A SIXTH CAUSE OF ACTION
### UNDER THE NEW YORK STATE HUMAN RIGHTS LAW
### <u>RETALIATION</u>

90. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

91. New York State Executive Law §296(7) provides:

> "It shall be an unlawful discriminatory practice for or any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

92. Defendant AHF engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of her opposition to Defendant's unlawful actions and her request and/or need for a reasonable accommodation.

### AS A SEVENTH CAUSE OF ACTION
### UNDER THE NEW YORK STATE HUMAN RIGHTS LAW
### <u>FAILURE TO PROVIDE A REASONABLE ACCOMMODATION</u>

93. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

94. New York State Executive Law §296(3)(a) provides:

> "It shall be an unlawful discriminatory practice for an employer, licensing agency, employment agency or labor organization to refuse to provide reasonable accommodations to the known disabilities of an employee, prospective employee or member in connection with a job or occupation sought or held or participation in a training program."

95. Defendant AHF further engaged in an unlawful discriminatory practice by discriminating against the Plaintiff by failing to provide a reasonable accommodation, and by failing to engage in the interactive process.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant AHF:

A. Declaring that Defendant AHF engaged in an unlawful employment practice prohibited by 42 U.S.C. § 1981, the FMLA, Title VII, and the New York State Human Rights Law, on the basis of Plaintiff's race, sex, pregnancy, actual and/or perceived temporary disability, and familial status, together with failing to provide a reasonable accommodation, failing to engage in the interactive process, creating a hostile work environment, retaliation and wrongful termination;

B. Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff liquidated damages under the FMLA;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendant AHF, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: September 22, 2022
      New York, NY

By: _____
**PHILLIPS & ASSOCIATES, PLLC**
*Attorneys for Plaintiff*
Silvia C. Stanciu, Esq.
45 Broadway, Suite 430
New York, NY 10006
(212) 248-7431

16